FILED
APR 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JAMES D. LUEDTKE AND ALL OTHERS #06819-089
SIMILARLY AFFECTED,
USP-Lee County PLAINTIFFS,
POB 305
Jonesville, VA 24263
    -V-
UNITED STATES OF AMERICA,
UNITED STATES CONGRESS, DEFENDANTS.

Case: 1:07-cv-00782
Assigned To : Unassigned
Assign. Date : 4/30/2007
Description: HABEAS CORPUS


JURY ACTION

## PLAINTIFF'S ORIGINAL COMPLAINT & REQUEST FOR DECLARATORY JUDGMENT

### PARTIES

1. Plaintiff, James D. Luedtke, is an individual, that files this action on behalf of himself and all other federal prisoners in the united states organized under law 28 C.F.R. §543.15, 551.30. James D. Luedtke addressed at box-305 Jonesville, Va 24263.

2. Defendant, federal government (U.S.A.), may be served a copy of complaint at D.O.J. 950 Pennsylvania Ave. N.W. Washington, D.C. 20530. Defendant, congress, may be served a copy of complaint at capitol building Washington, D.C. 20515.

### JURISDICTION

3. The court has jurisdiction over the lawsuit because the action arises under 28 U.S.C. §1651(b), 28 U.S.C. §1331, 28 U.S.C. §1391(a)(2). The sentencing reform act was made law by the defendants in Washington, D.C.

### FACTS

4. Plaintiffs bring this claim for a declaratory judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §2201, 2202

5. Facts giving rise to the dispute:   CONGRESS
    Prisoners are the favorite whipping boy for congress and the federal government. Prisoners can be blamed for everything wrong with America, and are aggressively demonized. In fact, almost every social ill is because of congress refusing to act or screwball show (pretense) legislation. In fact the defendants aggressively violate civil rights and human rights. Congress has a long history of bringing negative and draconian legislation against minorities, the poor and prisoners. The first duty of government is to protect the powerless (the public and prisoners) from the powerful (congress). The code of Hammurabi. The world's oldest legal code, 1700 B.C., Dent -V- West Va, 129 U.S. 114. Prisoners can be attacked without any opposition from a

RECEIVED
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

political lobby. No political lobby and no political power is part of the discrimination against prisoners by congress (failed government and social engineers) and a violation of the international covenant on civil and political rights (ICCRP). Because prisoners are politically powerless, they should have greater judicial protection. The S.R.A., P.L.R.A., A.E.D.P.A. is some of the draconian and unlawful legislation passed against federal prisoners over the years. The S.R.A. is the congressional jewel of throwing out the law and discrimination. On November 1, 1987 the sentencing reform act (S.R.A.) took effect. The S.R.A. has a host of illegalities. The sentencing reform act is a sentencing scheme riddled with constitutional violations. The S.R.A. started as a so-called rider bill. Part of a omnibus package of bills. Had the S.R.A. been an individual bill, it never would have generated the votes needed to become law. Members of congress almost never read the bill(s) upon which they are voting and rarely even know the legislation's details. The S.R.A. was passed into law without debate nor input from the public. Secret legislation really. The defendants have and continue to do everything possible to foster the scare tactics used in creating news media frenzies over every crime. A public terrified by the news media is going to agree with anything. Frankly, congress (hedonistic elites) lacks both expertise and proper perspective on prison and sentence issues. The congressional pet project (S.R.A., sentencing guidelines, mandatory minimums, supervised release) is a total failure at reducing the flow of drugs into the United States, and is a total failure at reducing the demands for drugs by citizens of the United states. Unlawfully overcrowding the 115 federal prisons in the United States by 134% does not mitigate the massive and grotesque failure of the congressional pet project, and the massive and grotesque failure by congress to manage the federal government properly. If there was even a ½ of one percent drop in the enormous, ballooning national prison population, new crime creation measures would be immediately put forth to boost imprisonment. Legalizing and regulating illicit drugs would cause a large drop in crime and imprisonment so it will not be done. It would largely eliminate drug dealers and drug trafficking so the defendants refuse to do it. Drugs was one of the reasons for putting the congressional pet project into law. In fact, when congress made the economy destroying, out of control free trade policies law, the importation of illicit drugs and the use therein, have gone up precipitously. In addition, a rift of poison and/or unlawful legislation, deteriorating middle class, out of control globalization, savage war mongering, out of control illegal immigration, corporate corruption, social abuses like 3.3 million good paying jobs lost in the past two years under congressional 'management', out of control budget deficits and the corruption of politics has created a larger class of people each year the keep themselves inebriated on drugs and/or alcohol, wind-up in prison or commit suicide. The United States has 4% of the world's population but uses 2/3rds of the world's illegal drugs. What decade is the great congressional miracle (sentencing reform act) going to end drug use and fix all the other social ills?

2

SENTENCING GUIDELINES

The sentencing guidelines and mandatory minimums cause wildly disproportional sentencing in many cases. Many prisoners are serving extraordinarily long sentences for a variety of low level, non-violent crimes. The average prison sentence today is 50% longer than under indeterminate sentencing. The sentences that are given out under the S.R.A. are so long, they no longer bear a rational relationship to the offense. Lex non cogit ad impossibilia (the law does not compel to impossible ends). The United States imprisons it's citizens at rates three to ten times higher than other democratic societies. Federal jurisprudence is contaminated with law more typically associated with countries the United States denounces as tyrannies. On January 12, 2005 the U.S. Supreme Court ruled the sentencing guidelines partially unconstitutional. There is no severance clause in the act of congress that mandated the U.S. sentencing guidelines. When the Supreme Court negates a provision of an act without a severance clause, the whole act is void from the beginning, as if it never existed. The Supreme court should have threw out the sentencing reform act, sentencing guidelines, mandatory minimums and the unconstitutional supervised release. Unfortunately, the U.S. Supreme Court is heavily pro government interests and heavily pro corporate interests. One bad byproduct of the S.R.A. is the federal government engaging in abusive prosecution. At least 75% of federal prosecutions are not really federal material. It's prosecuting just to fill prison bed quota. That is outside the scope of actual federal purpose. There is a clear pattern of abuse by the federal government and congress with the federal criminal justice system. The sentencing guidelines have some odious dimensions. The most false and preposterous is the government's claim that the guidelines eliminate inequities in sentencing. The federal criminal justice system is currently the definition of inequity. There is a large disparity between a guidelines sentence for a defendant who chooses to go to trial and that for a defendant who pleads guilty has resulted in a system in which defendants are dragooned to accept the government's so-called plea offer (plea enforcment really) in which all but 3% of defendants plead guilty. This unduly increases the leverage prosecutors have, giving them the upper hand. With only 3% going to trial, an unacceptable number of innocent people are pleading guilty. When up against an unstoppable juggernaut like the federal government, the innocent plead guilty next to the actual guilty in a effort to reduce the inevitable prison time. If a person refuses to plead guilty and gos to trial and looses, (only 10% win at trial) then he or she is hit with a massive sentence of 20 to 60 years on average. Under the S.R.A. a person is punished hard for exercising his or her due process rights of a trial. A person should not get a lot of extra prison time for exercising due process rights. Under the S.R.A. there is the inequities of black defendants getting more prison time than white defendants. Under S.R.A./guidelines there is a huge disparity between crack and powder cocaine. A violation of 18 U.S.C. §3553(a)(2). The cocaine disparities favor whites over minorites. Then there is the 100:1 ratio first cited by the U.S. sentencing commission. Look around every federal prison. How many african

3

americans are serving crack related sentences versus how many caucasians are serving powder cocaine sentences ? According to the sentencing commission's 2000 sentencing statistic's, 84.2% of blacks were convicted of crack related sentences. Compare that conviction rate with the report by the national institute on drug abuse, 75% of cocaine users were white, 15% were black and 10% were hispanic, crack users were found to be 52% white, 38% black and 10% hispanic. It is obvious that the racial impact of the 100 to 1 ratio has a significant disparate impact upon black citizens/prisoners. Congress has passed laws (S.R.A., sentencing guidelines) that are racially discriminating and have a racially disproportionate impact. Thus the 100 to 1 ratio and S.R.A. violates the treaty (international convention on the elimination of all forms of racial discrimination ICERD). The sentencing guidelines are disproportionate and inappropriately favorable to so-called 'white collar criminals'. The S.R.A. has a 22 year track record at this point. It's clear the S.R.A. and it's byproducts (sentencing guidelines, mandatory minimums, supervised release) were never about eliminating disparities. The S.R.A. and it's byproducts are about furtherance of arbitrary mass imprisonment, a rubber stamp federal criminal justice system and making sentences much longer. There was actually far fewer inequities under the pre 1987 indeterminate sentencing scheme. No doubt the reason it was eliminated. Further observing the S.R.A. and practices therein, runs the risk of eroding public confidence in the federal criminal justice system and defy the will of the U.S. constitution. In fact, the guidelines have already been ruled unconstitutional in a separation of powers issue. See: U.S. -V- Detwiler case no. 03-372-PA. Many district courts and appeal courts have ruled various aspects of the S.R.A./guidelines unconstitutional over the past 22 years. The S.R.A./guidelines continue to be used anyway. Additionally, the guidelines should be rejected because the sentencing guidelines also take into account a range of factors cited by probation officers. These probation officers have taken on the role once reserved for judges. Using their pre-sentence investigations to tally 'points' that determine the fates of defendants. A long-ago arrest for drunken driving, shoplifting, disorderly conduct, even charge(s) for which a defendant was acquitted can be thrown into the mix. anything and everything is used to jack up the points. Offten a defendant is given no chance to rebut a probation report. Probation officers offten refuse to remove incorrect information from pre-sentence reports because that would lower points. If a defendant refuses to sign a information release, the incorrect information that gos in a pre-sentence report can be substantial. Fundamental fairness requirements under Teague -V- Lane, 489 U.S. 288 should require that only a felony five years old or less could be used to add points. The S.R.A./guidelines throw out fundamental fairness required under the law.

 The S.R.A./sentencing guidelines are further constitutionally defective because the S.R.A./ guidelines create an unlawful sentencing scheme. Under the S.R.A./guidelines it's two separate sentences for one offense. The comprehensive crime control act of 1984 makes probation a

4

sentence in and of itself. See:Guidelines manual part B-probation. The conditions of supervised release authorized by statute are the same as those for a sentence of probation. See:Chapter 7, guidelines manual, violations of probation and supervised release part-A(2)(b). An example would be, a person gets a 40 year sentence and 5 years of supervised release. The first sentence is the 40 years. The second sentence is the 5 years of supervised release. Unlawful double punishment. See:U.S. -V- Ewell, 383 U.S. 116.

The courts have done an incorrect analysis of supervised release. Supervised release is not considered a sentence or punitive because the word "release" is used. In fact, supervised release has all the same restrictions on liberty as parole does. Supervised release can be revoked like parole and the person returned to prison. Therefore, supervised release is imprisonment not "release". The correct name would be supervised imprisonment. Supervised release has one purpose. To make sentences longer. The court should reject supervised release and declare supervised release unconstitutional.

The sentencing giudelines are further unconstitutional because of the new hypothetical split sentencing scheme (guidelines advisory). If a judge rejects the guidelines, it's simply the guidelines applied as the judge sees fit. A prison sentence and a sentence of supervised release is given with the judge setting the time instead of the guidelines (one sentencing scheme). If a judge rejects the guidelines, then the sentence must be done under indeterminate sentencing which would include parole instead of supervised release (other sentencing scheme). Parole is not severable from the indeterminate sentencing scheme (guidelines advisory) that is now allowed. There currently is no sentencing being done under indeterminate sentencing. That is because only one sentencing scheme is being applied i.e., the guidelines. If both sentencing schemes were being applied (as required), then there really would be a split sentencing scheme which would be unconstitutional. A preliminary study has showen that the vast majority of federal judges are voluntarily adhering to the guidelines. The new advisory provision of the guidelines has produced no meaningful nor effective change in a sentencing system that is inherently defective and unconstitutional.

PAROLE

During the past 60 years, the practice of transferring prisoners to parole custody has been an integral part of the penological system rather than being an ad hoc exercise of clemency. Parole is an established variation on imprisonment. The purpose of which is to help individuals reintegrate into society as constructive persons, without being confined (with prison walls) for the full term of the sentence imposed, and to alleviate the cost to society of keeping the person in prison. The congressional created budget crisis requires low cost types of imprisonment like parole, parole with satellite or electronic monitoring. In fact, 18 U.S.C. §4042 requires the federal bureau of prisons to take the cheapest measures. That would include parole, parole augmented with satellite monitoring or electronic monitoring.

The state of Georgia recently received $500,000 of federal money to operate satellite monitoring parole. The federal government is funding state parole while there is no federal parole. A denial of equal protection. The equal protection clause contemplates that similarly situated persons are to receive substantially similar treatment from their government. A recent sentencing project report states, 72 percent of federal prisoners are nonviolent offenders. The federal prisons are increasingly filling up with petty, non-violent offenders. The no federal parole mandate is unreasonable and unworkable.

Parole would have to be the therapy and rehabilitative stage of a sentence because congress has stripped those kinds of things out of the federal prisons. Congress decided the public has no right to a criminal justice system that produces anything positive and repealed federal parole in an underhanded manner. Legislators must assess the impact of legislative acts on both the prisoner and the community. That was never done. A legislative act must be actionable. First, there must be cause for action. The cause for throwing out a constitutionally correct sentencing scheme (indeterminate sentencing and parole) was congressional mismanagement of all aspects of government and the U.S. economy ? Government's hatred of black people ? Imperial hubris ? Second, the legislative act must be constitutionally correct and not in conflict with existing law. In fact, the S.R.A. is in conflict with much existing law and common sense. The practice of no parole is a relic of the past and is inconsistent with evolving standards of decency in a civilized society.

Congress eliminated federal parole in part, on an erroneous theory. That parole is a freedom that can be taken away. Parole is not freedom, but it is imprisonment. See: Jones -V- cunningham 371 U.S. 236. There is no liberty connected with parole that could be taken away by legislators. Parole is simply part of a constitutionally correct sentencing scheme. Congress rejected a constitutionally correct sentencing scheme (indeterminate sentencing and parole) and replaced it with a constitutionally defective sentencing scheme (sentencing guidelines and supervised release). Parole is also essential to create a constitutionally correct sentencing scheme. An example would be, a person gets a 5 year sentence. 75% of the sentence is spent in prison, the other 25% of the sentence is spent on parole. The prison imprisonment and parole imprisonment are both covered under the 5 years. That eliminates double punishment. Congress nor any court has demonstrated how parole contributed to sentencing inequities. Sentencing inequities was one of the contrived reasons for instating the dysfunctional sentencing guidelines and supervised release.

The federal parole board (5550 frendship Blvd. Chevy Chase, Md 20815) was supposed to exist for five years after federal parole was recinded. Then at a later date, the parole board charter was extended permanently. There is always going to be a federal parole board, but no federal parole. Another government boondoggle. A federal parole board confers due process rights for federal parole. U.S. parole commission responsibility: Grant, deny, or revoke parole

for eligible federal offenders under the labor management reporting and disclosure act (LMRDA) 29 U.S.C. §401. There is enough active parole statutes to reinstate federal parole for all federal prisoners.

## FEDERAL PRISONS

The sentencing reform act and it's by-products, (sentencing guidelines, mandatory minimums, supervised release, no parole mandate have been totally ruinous to the 115 federal prisons in the United States. The federal prison system is 134% over rated capacity (www.prisonlegalnews.org). The congressional mismanagement of all aspects of U.S. government is causing unconstitutional levels of prison overcrowding in the hellish federal prisons. The 115 federal prisons in the United States have been reduced to dumping ground warehousing for the homeless, mentally ill, aged/infirm, the indigent, illegal aliens, derelicts, ghetto dwellers and poverty stricken minorities. The defendants are very predatory against cited disenfranchised groups. Federal prisons must be more than depositories for unwanted human baggage. Congress passed get-tough-on-crime laws without providing funding and resources to allow prisons to cope with all the new prisoners (daily) being herded into the barbaric federal prisons. This is negligent management by the defendants. As a result, the 115 federal prisons are unsafe, unhealthy, inhumane, counterproductive, anti-rehabilitative, deliberately underfunded and their failures spill over into the communities. For example, more than 1.5 million prisoners (state and federal) are released each year carrying life-threatening, contagious diseases. A violation of 18 U.S.C. §3553(a)(2)(c). Violence. Prisoners and staff tell of near-constant fear of being assaulted. In fact, violence in the brutal federal prisons is on the rise precipitously. Mega overcrowding, lack of rehabilitation/recreation (useless warehousing), food service budget that is almost eliminated (80 cents per meal per prisoner results in appalling food), appalling medical care, impossible to complete sentences, no incentives are a few of the driving forces of prison violence the defendants refuse to address. Congress is very skilled at transforming non-violent persons into violent persons. Rehabilitation i.e., educational or vocational training, medical care, or other correctional treatment has been essentially eliminated in violation of 18 U.S.C. §3553(a)(2)(d). In fact, all federal prisons are poorly operated and poorly managed. Accountability. What goes on within the insular culture of federal prisons escapes scrutiny by the public and public officials. External monitoring is needed. There must be an independent agency to monitor the out of control federal prisons. The virulent federal prisons in the United States are cloistered and secretive. The public, news media, legislators, religious groups and international oversight/inspection groups are not welcome in the destructive federal prisons. The United States is one of the only western nations without a comprehensive and well-funded system in place providing for the routine inspection and monitoring of federal prisons by official outside observers who have unfettered access to every prison and prisoner. England, for example, has a separate governmental agency charged with

making regular inspections of all prisons and writing publicly available reports with recommendations. Similarly, 46 European nations open their facilites to routine inspection by a committee of the council of europe. The defendants have refused to make any law(s) requiring independent oversight of all federal prisons in the United States. The bureau of prisons policing the bureau of prisons is a shocking failure and conducive to law violations. Other mandates of the hypothetical federal prison commission should be oversight of the 4.6 billion dollar bureau of prisons budget and prisoner trust fund, prisoner living conditions, violence levels, overcrowding levels, oversight of library,law library,recreation and education for prisoners. Oversight of medical and dental for prisoners. Oversight of compliance with law, U.S. constitution, code of federal regulation and bureau of prison policy statement. Provide opportunity for any prisoners to talk to commission in person and provide mailing address of commission. Provide a written report on each prison inspection and make each report available to congress,news media,public and prisoners. Make any recommendations by commission binding on the bureau of prisons within 30 days. In addition, other deleterious effects of mega prison overcrowding are: Double,triple,quadruple celling,risks to prisoners physical and mental health. Exacerbates lunacy and psychosis, hypertension,chronic fatigue syndrome, mental fatigue syndrome. Dimished access to essential services, fewer opportunities to engage in any programs not yet gutted (none), levels of privacy and quiet insufficient for psychological well-being and exacerbated levels of tension, anxiety and fear. Increased incidence of self-multilation, suicide, attempted suicide. Overtaxes the sanitary facilities, exacerbates the problems of filith, noise and vermin. Causes deterioration in medical care, fosters increased idleness, breaks down the classification and incentive system and demoralizes prisoners and staff. Specifically: There are three times more mentally ill people in prison than in mental hospitals. In addition, prisoners have rates of mental illness four times greater than the rates found in the general population. Prisons are the de facto mental institutions of this century... and they are woefully ill equipped to deal with this ill population. The defendants have not developed a plan to deal with this situation other than unlawfully overcrowding the federal prisons to the point of being a widespread constitutional violation.All federal prisons are significantly overcrowded. The classification system in the federal prisons has largely broken down. Many prisoners with medium and low points can't transfer to medium and low security prisons because of the epidemic prison overcrowding. In fact, many low and medium security prisoners are held in maximum security untill their release date. This is in violation of 18 U.S.C. §3624(c) which requires prisoners be placed in a community corrections center for the last six months of a sentence. Can unlawful overcrowding be used as an excuse to throw out the law when law makers (congress) caused the overcrowding? Food service and medical facilities are overloaded beyond what they were designed for. The budget for food has been heavily slashed over the past few years in a effort to allow for more overcrowding.

The alleged food in the 115 federal prisons has went from mediocre to terrible. Much of the slop is only fit to feed to a barnyard hog. Slop congressional royalty would never eat. The waiting list to get dental services is one year or more at this point. Prisoners that need any treatment for serious medical problems like cancer, hepatitis B, or needing a transplant are under a death sentence from the illness. The so-called medical services in the federal prisons has been reduced to giving out aspirin and cold pills. At various federal prisons, space originally designated for one use is converted into dormitory living due to the unconstitutional mega overcrowding. Prisoners housed on floors, in hallways are other deleterious effects of mega overcrowding. Recreation, library law library services have been gutted at most federal prisons due to the overcrowding and the congress created budget crisis. There has been and will continue to be cuts in everything. There has not been any cuts in frivolous and improper prosecutions. There has not been any cuts in the bulging federal prison population. There has not been any cuts in targeting minorities to fill up the federal prisons. This is mismanagement of the federal criminal justice system and prison system by the defendants.

## DECLARATORY JUDGMENT

6. State request for relief: A declaration against sentencing reform act, sentencing guidelines, mandatory minimums and supervised release. That cited provisions in law be declared unconstitutional. That indeterminate sentencing be reinstated. That federal parole be reinstated retroactively.

7. Why declaratory relief is necessary: The S.R.A., sentencing guidelines, mandatory minimums supervised release all but eliminated judicial discretion, mercy and common sense in the federal criminal justice system. The relief is needed to mitigate the obscenity of much overzealous and abusive prosecutions.

Appellate review has been systematically reduced to a mere rubber stamp formality under the S.R.A.

In January 2005, the U.S. Supreme court made the sentencing guidelines advisory. The ruling was not retroactive.

Mandatory minimums encourage and reward those who inform on others. Providing information to prosecutors is the only way a defendant can reduce a sentence,'points'. Mandatory minimums are rarely imposed on drug "kingpins". Mandatory sentencing laws rule out more cost-effective drug treatment. The S.R.A. rules out cost-effective and constructive parole, parole augmented with satellite or electronic monitoring. At least 75% of federal prisoners are appropriate for cited parole. The abuse of government power connected with the federal criminal justice system is excessive and unmitigated.

The S.R.A., sentencing guidelines, mandatory minimums and supervised release are

9

disproportionately applied against minorities. The federal prison system is mostly minority prisoners. See: Also a study at www.cjcj.org/jpi/onemillion.html., www.cjcj.org/drug.

Congress is too big, too powerful, too intrusive, too mean-spirited, too dehumanizing and too undemocratic to be involved in mass people warehousing (federal prisons). Congress and the federal government is doing everything possible to advance it's incarceration holocaust. The defendants have micromanaged/mismanaged the federal criminal justice system and federal prison system into a state of dysfunction and widespread constitutional violations.

The defendants failed to provide any evidence indeterminate sentencing and parole caused sentencing disparities. The evidence of sentencing disparities under the S.R.A., sentencing guidelines, mandatory minimums and supervised release is overwhelming.

Court must entertain complaint concerning protected constitutional rights of prisoners because of necessity to achieve proper judicial administration of the federal criminal justice system and federal prison system.

42 U.S.C. §1997(g) requires the defendants to correct deplorable conditions in the federal prisons. That has not been done. Court is under a duty to intervene to protect plaintiffs from wholesale infringements of their constitutional rights, Procunier -V- Martinez, 416 U.S 405.

The small percentage of federal prisoners that are still eligible for parole, are denied parole systematically and unilaterally because of the no parole mandate in effect since 1986. Perhaps one percent or less of parole eligible are granted parole. That violates the spirit and letter of the law for parole. The parole board really serves little purpose but to provide salaries for parole board employees.

PRAYER

8. For these reasons, plaintiffs ask for judgment against defendants for the following:
   A. State relief sought: See number six, this complaint.
   B. Schedule a jury trial forthwith.
   C. Reasonable attorney fees.
   D. All court costs and filing fees.
   E. All other relief the court deems appropriate.

Dated: 3-28-2007

Pro se petitioner,

*James Lustoka* (signature)

10

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JAMES D. LUEDTKE AND ALL OTHERS
SIMILARLY AFFECTED,
          PLAINTIFFS,

   -V-                                                 Case No._____

UNITED STATES OF AMERICA,
UNITED STATES CONGRESS,
          DEFENDANTS.

---

PLAINTIFF'S DEMAND FOR JURY TRIAL

---

   James D. Luedtke, and all others similarly affected, asserts their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rules of Civil Procedure 38, a trial by jury on all issues.

Dated: 3-28-2007

                                                                  Pro se petitioner,

                                                                  James Luedtke